APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

              Plaintiffs,

vs.

LOCKALITA.COM, *et al,*

              Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs Apple Corps Limited and Subafilms
Limited's (collectively, "Plaintiffs") Motion for Entry of Final Default Judgment Against
Defendants, ECF No. [47] ("Motion"), filed on February 12, 2020. A Clerk's Default, ECF No.
[41], was entered against Defendants on January 22, 2020, as Defendants failed to appear, answer,
or otherwise plead to the Amended Complaint, ECF No. [19], despite having been served. *See*
ECF No. [29]. The Court has carefully considered the Motion, the record in this case, the applicable
law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### I. Introduction

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the
Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15
U.S.C. § 1125(a); common-law unfair competition; and common law trademark infringement. The
Amended Complaint alleges that Defendants are promoting, advertising, distributing, offering for
sale and selling goods bearing and/or using counterfeits and confusingly similar imitations of
Plaintiffs' registered trademarks within the Southern District of Florida by operating fully

interactive commercial Internet websites and Internet based e-commerce stores operating under the domain names or seller identities set forth on Schedule "A" attached to Plaintiffs' Motion for Entry of Final Default Judgment (the "Subject Domain Names and Seller IDs"). *See* ECF No. [47] at 18-20.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their right to determine the manner in which their trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiffs; (3) deceived the public as to Plaintiffs' association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill, as well as the commercial value of Plaintiffs' trademarks.

In their Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement. Plaintiffs further request that the Court (1) enjoin Defendants from producing or selling goods that infringe their trademarks; (2) cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (3) permanently remove the listings and associated images of goods bearing Plaintiffs' trademarks used by Defendants, via the Seller IDs, (4) require the surrender of Defendants' goods bearing Plaintiffs' trademarks to Plaintiffs; and (5) award statutory damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc.*

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order. *See* ECF No. [47] at 18-20.

*v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

## II.  Factual Background[2]

Plaintiff, Apple Corps Limited, is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|-----------|--------------------|-------------------|----------------------|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 014 - Watches.<br><br>IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Decorative refrigerator magnets; computer keyboard accessories, namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for |

---

[2] The factual background is taken from Plaintiffs' Amended Complaint, ECF No. [19], Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants, ECF No. [47], and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms.<br><br>IC 014 - Jewelry boxes not of metal, including ceramic and porcelain jewelry boxes for trinkets; jewelry; horological and chronometric instruments, namely, watches and clocks; watch straps, cuff links, brooches, bracelets, bangles, earrings, pendants, medallions, trinkets being jewelry, charms being jewelry, rings being jewelry, tie pins, jewelers ornamental tie pins, lapel pins, tie clips, collectible non-monetary coins, ornamental pins; articles of precious metal and their alloys, and articles coated with precious metal and their alloys, namely, belt buckles for clothing, coasters, jewelry boxes, key rings, key chains; hat and shoe ornaments and key fobs all of precious metal; rings being jewelry; ornamental pins; cigarette and cigar cases; precious stones; semi-precious stones; statuettes and figurines of precious metal or precious stone or coated therewith; scale model vehicles, ships or submarines all made from, or coated with precious metal or precious stone.<br><br>IC 016 - Bond, carbon, copy, printing and writing paper; cardboard; printed matter, namely, printed awards, printed award certificates, and reproductions of printed award certificates, and printed emblems and forms; book binding materials, namely, coated paper |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | for use as book binding and book binding cloth; mounted and unmounted photographs; stationery; adhesive tapes for stationery or household purposes; artist materials, namely, paint brushes, artists' sketch pads, drawing and painting papers and charcoal pencils; electric and non-electric typewriters; office requisites, namely, paper shredders and embossers; printed instructional and teaching materials on the subject of music; plastic bubble packs for packaging; printing type; printing blocks; posters; books, namely, educational books on the subject of musical groups, books on the subject of the entertainment industry, books on the subject of modern history, and biographies; address books; song books; business cards; paper gift cards, postcards; printed invitations; greeting cards; calendars; photograph albums; prints, namely, photograph prints and pictorial prints; paper gift bags; paper gift boxes; note pads, note books; adhesive backed paper for stationery purposes; pens, pencils and crayons; stationery push pins and thumbtacks; diaries; blank checks and blank check books; check book covers; coasters of cardboard or paper. gift tags of paper and cardboard; decorative pencil tip ornaments made from paper, cardboard and paper mache; stickers; decalcomania; ring binders in the nature of document files; folders; personal organizers; covers for books and for personal organizers; paper table cloths; printed sheet music; printed paper publications in the nature of magazines, activity books, and coloring books on the subject matter of musicians, animation, caricatures, cartoons, fiction and motion picture films; books, booklets, pamphlets, printed guides, comic books and magazines on the subject of music, musicians, caricatures, animation, cartoons, fiction and motion picture films; comic books; general feature magazines; children's activity books; scrapbook albums; |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | crossword puzzle books; educational activity books on the subject of music; writing paper; envelopes; small note pads; trading cards; pictures; art prints and framed art prints; framed and unframed pictorial prints, cartoon prints, lithographic prints, color prints, caricature prints, computer generated pictorial prints, and black and white, and color prints featuring hidden or three dimensional images; graphic art etchings; cardboard gift boxes; paper gift wrap; memo pads; stationery paper; book covers; figurines of paper, cardboard or paper mache; party decorations of paper, cardboard or paper mache for Christmas use; kits composed of paper or cardboard for making paper figurines; collectable non-postage commemorative stamps; rubber stamps; protective covers for books and personal organizers for stationery use; telephone directories; paper desk mats; pen and pencil cases; pen and pencil boxes; pen and pencil holders; drawing rulers; erasers; printed paper embroidery design patterns; sewing patterns for making clothes, knitting patterns. iron-on transfers for decorating textiles; printed wall charts; paperweights, not of precious metal; babies' bibs of paper; bookmarks; passport holders all made from leather or imitation leather; pencil cases, notelets and autograph books; reusable textile lunch bags; reusable plastic shopping bags.<br><br>IC 018 - Goods made from leather or imitation leather, namely, waist pouches for carrying purses and wallets; luggage, carry on traveling bags, clutch bags, trunks, business card cases, rucksacks, backpacks, purses, wallets, key cases, luggage tags; billfolds, leather key fobs, key cases, umbrellas; bags, namely, handbags, shoulder bags, all-purpose sports bags, barrel bags, carry-on flight bags, and duffel bags, suitcases, attaché cases, school bags, satchels, |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | gym bags, beach bags and credit card cases; hand carry overnight cases of metal, plastic or resin; tote bags, including metal totes; textile shopping bags; identity card holders of leather and imitations of leather.<br><br>IC 024 - Decorative window curtains of wood, reed, bamboo, beads or plastic; household linen; bed linen; bedspreads; table linen; table cloths not of paper; table mats not of paper; textile table napkins; coasters made of table linen or textile; unfitted fabric furniture covers; bed sheets, pillow cases, duvet covers; towels; face towels; face washing cloths; curtains; wall hanging of textile; cloth banners; cloth bunting; cloth flags; handkerchiefs; cushion covers; pre-cut textiles for making into cushions and cushion covers; traced cloths for embroidery.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, T-shirts, sweatshirts; sweatpants; jackets, coats; pullovers; vests; articles of underclothing, namely, underwear; shorts; scarves; silk pocket squares; neck-ties; braces in the nature of suspenders; belts; socks; long-sleeved shirts and long sleeved T-shirts; silk scarves; silk scarves in the shape of squares for wearing over the head or around the neck; pants; fleece tops; thermal tops; jerseys; baseball jerseys; hockey jerseys; sweaters; tank tops; waistcoats; trousers; golf shirts; golf pants; golf shoes; swim wear; beachwear; night gowns; pajamas; dressing gowns; bathrobes; bathing caps; head bands; slippers; beach shoes; sandals; clothing for toddlers, infants and babies, namely, rompers, shortalls, babies' sleep suits; cloth babies' bibs.<br><br>IC 027 - Carpets; rugs; linoleum for use on floors; wall hangings not of textile; reed mats; rubber and plastic bath mats; door mats; textile |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | floor mats for use in the home. |

*See* Declaration of Paul Cole, ECF No. [7-1] at 4-5; ECF No. [19-1] (containing Certificates of Registrations of the BEATLES Marks at issue.) The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Paul Cole, ECF No. [7-1] at 4-5.

Plaintiff, Subafilms Limited, is the registered owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 024 - Household linen; bed linen; bedspreads; bed sheets, pillow cases, towels. |

*See* Declaration of Paul Cole, ECF No. [7-1] at 10-11; ECF No. [19-2] (containing Certificate of Registration for the YELLOW SUBMARINE Mark at issue.) The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Paul Cole, ECF No. [7-1] at 10-11.

Defendants, by operating Internet websites and Internet based e-commerce stores operating under Defendants' respective domain names or seller identities identified on Schedule "A" hereto (the "Subject Domain Names and Seller IDs"), have advertised, promoted, offered for sale, or sold

goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions or colorable imitations of the BEATLES Marks and/or the YELLOW SUBMARINE Mark (collectively "Plaintiffs' Marks"). *See* Declaration of Paul Cole, ECF No. [7-1] at 16, 18-20, 23; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [7-2] at 2; Declaration of Kathleen Burns, ECF No. [7-3] at 4.

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [7-1] at 16, 18-20, 23. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks. *See* Declaration of Paul Cole, ECF No. [7-1] at 16, 18-20, 23.

Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. *See* Declaration of Paul Cole, ECF No. [7-1] at 17; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [7-2] at 2; Declaration of Kathleen Burns, ECF No. [7-3] at 3. Invisible accessed the Internet websites and Internet based e-commerce stores operating under the Subject Domain Names and Seller IDs, and placed orders from each Defendant for the purchase of various products, all[3] bearing and/or using

---

[3] Plaintiffs assert certain Defendants blurred-out and/or physically altered the image of Plaintiffs' Marks on the products being offered for sale via their respective e-commerce stores. The products Invisible received from these Defendants bear Plaintiffs' Mark in their entirety. True and correct photographs of the products received by Invisible from these Defendants showing the products offered for sale by certain Defendants showing Plaintiffs' trademarks in their entirety, are included in Comp. Ex. 3 to the Burns Decl. *See* Declaration of Kathleen Burns, ECF No. [7-3] at 4 n.1.

counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [7-3] at 4. Each order was processed entirely online and following the submission of the orders, Invisible received information for finalizing payment for the various products ordered via Amazon Payments, Inc.,[4] PayPal, Inc. ("PayPal") to Defendants' respective PayPal accounts[5] and/or via Defendants' respective payee,[6] as identified on Schedule "A" hereto.[7] *See* Declaration of Kathleen Burns, ECF No. [7-3] at 4. At the conclusion of the process, the detailed web page captures and images of Plaintiffs' branded products ordered via Defendants' Subject Domain Names and Seller IDs, together with photographs of certain products received, were sent to Plaintiffs' representative for inspection. *See* Declaration of Paul Cole, ECF No. [7-1] at 18; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [7-2] at 2.

Plaintiffs' representative reviewed and visually inspected the detailed web page captures and photographs reflecting Plaintiffs' branded products Invisible ordered from Defendants' through the Internet websites and Internet based e-commerce stores operating under their

---

[4] Amazon.com is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [7-2] at 4; Declaration of Kathleen Burns, ECF No. [7-3] at 4 n.2.

[5] Upon completion of Invisible's purchases from Defendants Number 36 and 60 operating via eBay.com, Invisible discovered that the PayPal receipt received did not identify the respective Defendant's PayPal financial account in the form of an e-mail address. However, each receipt identifies the Transaction Identification Number ("Transaction ID") for the purchases made from these Defendants' Seller IDs, and PayPal is able to identify a PayPal account using the Transaction ID. *See* Declaration of Kathleen Burns, ECF No. [7-3] at 4 n.3.

[6] The payee for the orders placed from Defendant Numbers 70-77's Wish.com Seller IDs identifies "PayPal *Wish." "WISH (ContextLogic Inc.)" is the named PayPal recipient for individual transactions conducted with sellers through Wish.com. *See* Declaration of Kathleen Burns, ECF No. [7-3] at 4 n.4.

[7] The e-mail addresses provided on the websites operating under the Subject Domain Names are included on Schedule "A" hereto. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [7-2] at 3.

respective Subject Domain names and Seller IDs, and determined the products were not genuine versions of Plaintiffs' goods. *See* Declaration of Paul Cole, ECF No. [7-1] at 18-20.

## III. Analysis

### A. Claims

#### 1. Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

#### 2. False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and

infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Common-Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B. Liability

The well-pled factual allegations of Plaintiffs' Amended Complaint properly allege the elements for each of the claims described above. *See* ECF No. [19]. Moreover, the factual allegations in Plaintiffs' Amended Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g.*, *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of

13

thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [19]. Further, the Amended Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiffs' genuine products. *See id.* "The net effect of Defendants' actions will cause confusion for consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Plaintiffs." *See* ECF No. [19] at 36.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names and Seller IDs because Plaintiffs cannot control the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputations in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's

broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g.*, *Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling, or transferring their Subject Domain Names to Plaintiffs, their listings and associated images be removed, and the goods of each Defendant bearing one or more of Plaintiffs'

trademarks be surrendered to further prevent the use of these instrumentalities of infringement.

### D. Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-23 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed*

*Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, clearly establish Defendants intentionally copied Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' famous respective reputations. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold goods bearing marks which were in fact counterfeits of at least one of Plaintiffs' Marks. *See* ECF No. [19]. Based on the above considerations, Plaintiffs suggest the Court award statutory damages of $1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of

15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.  Damages for False Designation of Origin

Plaintiffs' Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F.  Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiffs' Amended Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [47],** is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 12, 2020.

**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

**SCHEDULE A:**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, SELLER ID,**
**ASSOCIATED FINANCIAL ACCOUNTS, STORE URL,**
**ASIN AND ADDITIONAL E-MAIL ADDRESSES**

| Def. No. | Subject Domain Name / Seller ID | Amazon Seller ID / PayPal Account / Payee | Additional E-mail Address / ASIN / Store URL |
|---|---|---|---|
| 1 | lockalita.com | lockalita.inc@gmail.com | lockalita@gmail.com |
| 2 | musitee.com | clotee21@gmail.com | support@musitee.com |
| 3 | shoes4p.com | payment4@shoes4p.com | SUPPORT@SHOES4P.COM |
| 4 | Abel Mall | ALYMFTP4Y0AJ1 | B07P7NCFP2 B07P7M9PV6 |
| 5 | *n/a* | | |
| 6 | Big KE Shirt | A1XWCXTBCSQIOD | B07RLF19CT B07RMHSS33 |
| 7 | big-yeesterst | A205KVPECFHKHO | B07Q8F8WP5 B07Q51L5KW |
| 8 | chen fang stoire | ACL75Y2PI4FUN | B07VGQX3MR |
| 9 | chengdouwanmuchunyuanlinlvhuagongchengyouxiangongs | A35H81XK7GYV54 | B07V8626YC |
| 10 | COLOSTORE | A9LMJ3277QQX | B07Q1HBSJ6 |
| 11 | DecorPillows | A38LA4JEAIOWTF | B07KG6KG3X |
| 12 | fclft62cmil | A25KZ5FQIKNH36 | B07X5YD7YF |
| 13 | FG32dgh21 | A39SUSM4P3AJLF | B07W4H61PW |
| 14 | guixhou jiahe guanghui shangmao youxian gongsi | A2YKLWCCSRYIS2 | B07VB7J9LS |
| 15 | guolaiyou | AQ9I71SBGXGS5 | B07VV1D43Y |
| 16 | GuoTaoo | A32BUPWPD5Y3IA | B00N0ERASS |
| 17 | houmengxingdgdrh | A2VCR3RXHW9ZRX | B07S5125RN |
| 18 | KeZeMaoYiYouXianGongSius | A31ZN2H40SRAGC | B07TCN8QP6 |
| 19 | linyunland | A2RPTIVV0V1QZ6 | B07VY3NQ9R B07VZD7CS1 |
| 20 | LONGLIF | A1E7UB5DMUHL53 | B07VPMWDJB |
| 21 | Lzxlxr | A3OU3JDTWLBONE | B07WHSS6RM |
| 22 | MELISAL | A2ZUW8QDS6H07S | B07V9FYPFP |

| 23 | MR.GrayUS | A3IL4G7S8HPAZ5 | B07VR638DD |
|----|-----------|----------------|-----------|
| 24 | PhoenixLaw20 | AT289ECBGYW25 | B07KG6KG3X |
| 25 | shiniucun | A2HRKJSO90JBXN | B07VQ27FMB |
| 26 | Shirnaile_2ee | A1IR9TEUZNMBX9 | B07SC1CZWK |
| 27 | Terstin | ADZ25K750U0OV | B07VLVNQL8 |
| 28 | upv259CFIMPS | AYUCPRWMRM9ZL | B07X3S1G7L |
| 29 | adi-8515 | 8ezaaditya@gmail.com | |
| 30 | ahmajaswad0 | ahmadjaswadi222@gmail.com | |
| 31 | aliakba_57 | alifakbar882@gmail.com | |
| 32 | *n/a* | | |
| 33 | bezo.padeo | CatherineJoanVirani@outlook.com | |
| 34 | brtos-85 | tosenobrown79@gmail.com | |
| 35 | charlefenstermache0 | charlesfenstermacher@yahoo.com | |
| 36 | *n/a* | | |
| 37 | daries.store | dariaesm@yahoo.co.id | |
| 38 | dekot-71 | febrisudrajat@yahoo.com | |
| 39 | dessratnasar-0 | suryadmojo6@gmail.com | |
| 40 | di_8050 | ardian7561@gmail.com | |
| 41 | ekrezand4 | ekarezanda@gmail.com | |
| 42 | fadlsumarson0 | fadlisumarsono@yahoo.com | |
| 43 | fasangstore | pak.darg99@gmail.com | |
| 44 | felixjean | felixjaehn99@gmail.com | |
| 45 | finfiay_0 | finfin.ayu278@gmail.com | |
| 46 | *n/a* | | |
| 47 | geasm-0 | 7gedeasmara@gmail.com | |
| 48 | ginav-9 | 8giginavina@gmail.com | |
| 49 | id2014.mutah | kal.mutaher@gmail.com | |
| 50 | iwob1337 | 531239686@qq.com | |
| 51 | jaman.barbara6 | jaman.barbara@gmail.com | |
| 52 | jatsaputr_0 | jatisaputra05@gmail.com | |

| 53 | johnjonso0 | garettexoz@gmail.com | |
|----|-----------|---------------------|---|
| 54 | jumjan10 | assyoudool@gmail.com | |
| 55 | kedaiku | kedaiku79@gmail.com | |
| 56 | *n/a* | | |
| 57 | mao9852 | Mao988faith@163.com | |
| 58 | naspadan_0 | getuklindri242@gmail.com | |
| 59 | nddw7640 | xiongyanzhe@foxmail.com | |
| 60 | *n/a* | | |
| 61 | rambagu_0 | rodjobagoes@gmail.com | |
| 62 | rikid.oioshlb | tresnoriko415@gmail.com | |
| 63 | romantore | romansikintore@gmail.com | |
| 64 | sir-1908 | 0adisiregar@gmail.com | |
| 65 | smha-46 | hari.smits@gmail.com | |
| 66 | smile-seller | zs1005520724@hotmail.com | |
| 67 | soham56 | sodikhamdan38@gmail.com | |
| 68 | syah_3253 | syahdu.az@gmail.com | |
| 69 | vildavi-0 | vinngaell@gmail.com | |
| 70 | 493498550@QQ.COM | PAYPAL *WISH | https://www.wish.com/merchant/5752bba3bc03705cc3e67d58 |
| 71 | EsozaCouture | PAYPAL *WISH | https://www.wish.com/merchant/58497840d271cf4c9d04f92a |
| 72 | hongbin shopping | PAYPAL *WISH | https://www.wish.com/merchant/5401f2307a9eb45ff2daccee |
| 73 | LEGEND WATCH | PAYPAL *WISH | https://www.wish.com/merchant/57a1aa87a654ab0f5596925c |
| 74 | Magic house | PAYPAL *WISH | https://www.wish.com/merchant/539fa48046188e170500d455 |
| 75 | red rose accessories company | PAYPAL *WISH | https://www.wish.com/merchant/556d520da2c01a27be5781b6 |
| 76 | shuang_kai | PAYPAL *WISH | https://www.wish.com/merchant/58ef26760d27561209654a90 |
| 77 | z-plaza | PAYPAL *WISH | https://www.wish.com/merchant/576bfaedb4018c3c17eed400 |